## DONALDSON'S ADM'R vs. WATERS' ADM'R.

[ACTION BY PURCHASER TO RECOVER BACK MONEY PAID UNDER PAROL CONTRACT FOR SALE OF LAND.]

1. *When purchaser cannot recover money paid under parol contract for sale of land.*— A purchaser of land, under a parol contract, who has gone into and enjoyed the possession for many years, cannot recover back a part of the purchase-money which he has paid, unless the contract has been rescinded; and the *onus* is on him to prove such rescission.

2. *What amounts to abandonment and rescission of contract.*—Where the *onus* of proving a rescission is on the purchaser, and there is no evidence of the terms of the contract, the mere fact that the vendor recovered the land, with mesne profits, by action of trespass against the purchaser's widow, does not show such an abandonment or repudiation of the contract on his part as authorized a rescission by the purchaser.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. A. A. COLEMAN.

THIS action was brought by the administrator of Peter Donaldson, deceased, against the administrator of John C. Waters, deceased, to recover the sum of $5,000, with

interest, paid by said Donaldson to Waters, on the 7th January, 1837, as a part of the purchase-money for a tract of land; and was commenced on the 6th February, 1857, after the decision of the supreme court had been pronounced in the former case between the same parties, reported in 30 Ala. 175. The complaint contained three counts; the first and second counts being in the common form, for money had and received, &c., and the third averring specially the sale by Waters to Donaldson, the possession of the latter under the contract up to the time of his death, his payment of $5,000 as a part of the purchase-money, and the subsequent repudiation of the contract by Waters, by the institution of an action of trespass against Donaldson's widow for the land, with mesne profits as damages, and the recovery of a judgment against her. The defendant pleaded, in short by consent, the general issue, the statute of limitations of six years, the statute of non-claim, and, to the third count, several special pleas, in which he set up the judgments hereinafter particularly referred to, averred a recognition by the defendant of the existence and validity of the contract of sale, and declared his readiness and willingness to comply with the terms of the contract on his part on the payment of the unpaid balance of the purchase-money.

On the trial, as appears from the bill of exceptions, the plaintiff read in evidence a written agreement, signed by the attorneys of both parties, in these words: "It is agreed, that all the testimony read on the trial of the case of Spencer, as administrator of Donaldson, against Rogers, as administrator of Waters, (determined by the supreme court at its January term, 1857,) and the record of that case, may be read on the trial of this case, subject to legal exceptions as to its relevancy; also, that Donaldson died in 1843, in possession of the Bell tavern in Tuskaloosa; that his estate was reported insolvent on the 5th July, 1845, and duly declared insolvent on the 18th August following; that a suit brought by said Waters, against a former administrator of Donaldson, for the rent of said premises, was defended on the ground that there was a contract of purchase by Donaldson from Waters;

and that the jury found a verdict for the defendant, at the May term, 1847, returning as a reason for their verdict that there had been a contract of purchase."

The plaintiff then read in evidence, under this agreement, a letter from Waters to Donaldson, dated Dec. 28th, 1836, requesting the latter to pay to one Wright, as his agent, certain moneys in his hands; and Wright's receipt, as agent of Waters, dated January 7th, 1837, in which it was stated that the $5,000 was paid by Donaldson " on account of a certain piece or parcel of real estate, with the appurtenances, situate in the city of Tuskaloosa, and known as the 'Bell tavern.' " The plaintiff then read in evidence the testimony of William Braley and James D. Spiller, as given on the trial of the former case, and an admission as to the testimony of Daniel Cribbs; each of whom had been a former administrator of Donaldson, and each stated, that he found among Donaldson's papers no other written evidence of the contract of sale between Waters and Donaldson than Wright's receipt above mentioned. Braley further testified, " that said Waters, in 1845, presented to him, as such administrator, an account for $4,800, which he claimed as a debt against said Donaldson for the rent of the Bell tavern; that he told Waters, it was very strange he should present such an account for rent, when he had sold said property to Donaldson, as he (witness) had found among Donaldson's papers a receipt showing that he had paid $5,000 on account of the sale of said property; that he offered to show said receipt to Waters, who said that he did not want to see it,—that he knew all about it, and that he attended to his own business, and to his suits in Georgia; that he (Waters) did not deny there was a sale, and said he would have made a title, but that all the purchase-money had not been paid; and that he also said Donaldson owed him more, but did not state how much." The plaintiff further proved notice to defendant to produce any written evidence in his possession of the sale by Waters to Donaldson, and defendant stated that he had none.

The plaintiff then read in evidence the record of the suit founded on said account for rent, which was instituted by said Waters, against a former administrator of Donaldson, on the 19th April, 1845, and was decided on the 26th May, 1847, by a verdict and judgment for the defendant, as stated in the agreement above copied ; also, the record of a suit instituted by said Waters against the widow of said Donaldson, on the 24th November, 1845, in the United States court for the middle district of Alabama, in an action of trespass to try titles to said lands, as well as to recover damages, and which was dismissed, for want of jurisdiction, at May term, 1847 ; the record of another suit in an action of trespass to try titles to said lands, which was instituted by said Waters, against the widow of said Donaldson, on the 7th September, 1847, was defended on the plea (among others) of the statute of limitations, and resulted in a verdict and judgment in favor of Waters on the 23d March, 1852, for $2,350 damages, besides costs ; and the record of the former suit instituted by Donaldson's administrator against Waters' administrator, which was commenced on the 19th July, 1847, and was before the supreme court at its January term, 1853, and again at its January term, 1857, when the judgment of the circuit court in favor of the defendant was affirmed. See the case reported in 22 Ala. 460, and in 30 Ala. 175.

The plaintiff then proved, that Donaldson was in possession of the 'Bell tavern' in Tuskaloosa from 1830 or 1831, soon after it was built, up to the time of his death ; that his widow then continued in possession up to the time of the recovery in trespass against her, "and from that time to the present by sufferance" ; that the wife of said Waters was the only child of Donaldson living at his death, the other distributees of his estate being the children of two deceased daughters. He also read in evidence the deposition of W. B. Wright, the agent by whom Donaldson had sent the $5,000 to Waters, and who testified, that he did not know on what account the money sent by him was paid, and that he signed the receipt as prepared by Donaldson ; and three letters from Donaldson to Waters, dated respectively the 9th December, 1836,

the 9th January, and the 10th September, 1837 ; the first of which stated, that the writer had $5,000 in bank for Waters, subject to his order; the second, that the money had been sent by Wright, "in part payment for the money which you paid for me, for the house and lot I now live in, called the 'Bell tavern'"; and the third containing these words : "In January next I hope it will be in my power to pay you all the money that is long since due you."

" This being all the evidence in the case, the court charged the jury, that the bringing of the action of trespass by Waters against Mrs. Donaldson, and the recovery therein, do not entitle the plaintiff to recover in this suit, unless said action and recovery against Mrs. Donaldson were unauthorized by the terms of the contract of sale; and that the burden of proving the terms of said contract, so as to show that they were unauthorized, was on the plaintiff."

The plaintiff excepted to this charge, and then requested the following written charges to the jury :

" 1. If the jury believe from the evidence that the sale was verbal, then, in the absence of proof of what the terms of the sale were, the suing for and recovering the premises by the defendant's intestate may be considered as evidence to show that he did not intend to abide by the sale on his part, but had abandoned the same.

"2. If the jury believe from the evidence that, the title of the lot being in Waters, in was verbally agreed between him and Donaldson, that Waters would advance the money to build the Bell tavern on the lot, and would convey the premises to Donaldson on the re-payment of the money to be so advanced ; and that Donaldson, after the tavern was built, repaid to Waters the money so advanced, or a part thereof; and that Waters, after the death of Donaldson, brought his action of trespass against Donaldson's widow, to try titles and recover the premises with damages,—such recovery may be considered as evidence to show that Waters repudiated the said contract."

The court refused both of these charges as asked, but gave them with this qualification to each, to-wit: "That

the suit and recovery against Donaldson's widow would not be sufficient to entitle the plaintiff to recover in this case, unless said suit and recovery were unauthorized by the terms of the alleged contract of sale; and that the burden of proving the terms of said alleged contract of sale, so as to show that said suit was unauthorized, was on the plaintiff."

"3. If the jury believe from the evidence that the contract of sale was verbal merely, and that Donaldson was let into the possession of the premises under the said contract, then the said action by Waters against Mrs. Donaldson, and the recovery of the premises in that action, with damages for the detention thereof, authorized the plaintiff, as Donaldson's administrator, to treat the said contract as at an end, and to sue for and recover the money paid by Donaldson under said contract, unless they believed from the evidence that the terms of said contract authorized Waters to resort to said action, on the failure to pay the purchase-money, or any part thereof."

The court refused this charge, also, as asked, but gave it with this addition, to-wit: "That the burden of proving the terms of the said contract, so as to show that the said action and recovery were unauthorized, was on the plaintiff."

The plaintiff excepted to the refusal of these charges as asked, and to the qualifications given; and he now assigns the same as error, together with the affirmative charge of the court.

E. W. PECK, for the appellant.—The undisputed facts of the case are these: That there was a verbal sale of the "Bell tavern" by Waters to Donaldson; that Donaldson was let into the possession of the premises under the contract, paid a part of the purchase-money, and afterwards died in possession, being insolvent, and leaving as his only heirs-at-law a daughter, the wife of Waters, and two infant grand-children; and that Waters, after Donaldson's death, without first offering to perform the contract on the payment of the balance of the purchase-money, recovered the premises, with $2,350 damages by

way of mesne profits, by action at law against Donaldson's widow. The question is, whether Donaldson's administrator can recover back, in this action, the money so paid by his intestate.

In Allen v. Booker, 2 Stew. 21, it was held, that assumpsit lies to recover back money paid under a parol purchase of land, the contract being void by the statute of frauds. In that case, unlike this, the purchaser was not let into possession; but the vendor here, having elected to eject the purchaser's widow, does not stand in any better condition than if he had never let the purchaser into possession. Nor does it make any difference, whether or not the contract contained any provision authorizing such ejection; because the vendor, by virtue of his title, had a legal right to eject the purchaser, even if the contract had expressly stipulated that he should not. Having elected to exercise this legal right, he must return the money received under the contract: he cannot be permitted to have both the money and the property.

In Castleberry v. Pierce, 5 Stew. & P. 150, which was an action by the purchaser's administrator, to recover money paid on a sale of lands, it appeared that the purchaser received a bond for titles from his vendor, was let into possession, and paid the greater part of the purchase-money; and that after his death, a balance on the last note being due, the vendor took possession of the land, and sold it. On this evidence, the court charged the jury, that the vendor had a right to rescind the contract, provided the purchase-money had not been paid at the time he took possession; that his taking possession and selling might be considered a rescission of the contract; and that, if the contract was rescinded, the plaintiff was entitled to recover back the money paid on account of it. On this charge, which was excepted to, the plaintiff had a verdict and judgment, which was affirmed on error. Now, if the vendor may re-enter, if the purchase-money be due and unpaid, where the written contract reserves no such right, he certainly may do so where the contract is by parol merely; and, if so, why require the purchaser to prove that the contract contained no such stipulation.

In the case last cited it is said, that there was no agreement for a re-entry by the vendor, in the event of a failure to pay, unless the right was implied as a means of rescinding the contract; but that the vendor, having chosen to claim and exercise that right, could have no ground on which to object to the alleged rescission; and further, that if he could only rescind, *stricti juris*, on the re-payment of the money received, yet, having claimed the privilege without doing so, and having received the benefit, and the adverse party having acquiesced in it, and being willing to receive the re-payment now, the vendor was estopped from insisting that his re-entry and rescission were unauthorized.

The plaintiff's right of recovery, then, did not depend on his proving affirmatively that, by the express terms of the contract, the action and recovery by the vendor were unauthorized: on the contrary, he was equally entitled to recover, if the contract contained no provision whatever on the subject. In Waters v. Spencer, 22 Ala. 460, this question was not decided, because it was not presented by the record; besides, the court there treated the sale as a written, not as a verbal contract. When that case was again before this court, at its January term, 1857, and it appeared that the contract was merely verbal, the judgment was affirmed, not because the terms of the contract were not proved, but because the acts and declarations of the vendor, which were relied on to show that he had rescinded the contract, or, at least, authorized the purchaser's administrator to treat it as at an end, transpired after that suit was brought. In this case, the plaintiff failed, under the charge of the court, because he could not prove a negative fact, to-wit, that the terms of the contract did not authorize the vendor to re-enter; thus reversing the natural order of proof, by requiring the plaintiff to prove the non-existence of a fact,—a fact, too, which, if it existed, was peculiarly within the defendant's knowledge, and constituted the only defense on which he relied. When the plaintiff had proved the *factum* of the sale—that it rested in parol merely—that the purchaser was let into possession, and

paid a part of the purchase-money—and that after his death, his estate being insolvent, the vendor re-entered, and ejected his widow by suit—he had proved all that was necessary, *prima facie*, to entitle him to a verdict; and it then rested with the defendant to destroy that *prima-facie* case, by proving that such re-entry was authorized by the terms of the sale.

But such proof, even if made by the defendant, would have constituted no defense to the action. A provision in a verbal contract, authorizing a re-entry by the vendor, as a means of enforcing the payment of the purchase-money, or for any other purpose than to put an end to the contract, could have no greater validity than the contract itself, and could neither give nor take away the vendor's right to re-enter. That no action can be maintained upon a verbal contract for the sale of land, although there may have been acts of part performance by both parties, see Johnson v. Hanson, 6 Ala. 351; Rhodes v. Storrs, 7 Ala. 346; Gillespie v. Battle, 15 Ala. 276. If no action can be maintained on such a contract, it certainly imposes no legal obligation on either party, and either may disregard it,—the vendor, by resuming the possession, or suing for the land; and the purchaser, by recovering back the money paid by him on account of it. Such action, by either party, is not founded on the contract, nor to recover damages for the breach of it; consequently, the terms of the contract need be neither stated nor proved. The purchaser's action is founded on the fact, that the money was paid without consideration, or that the consideration for the payment had failed.—Allen v. Booker, 2 Stew. 25; Gillespie v. Battle, 15 Ala. 282–84.

If the plaintiff cannot recover in this case, he is without remedy, in consequence of the insolvency of his intestate's estate.

W. MOODY, *contra*, cited and relied on Spencer v. Waters, 22 Ala. 460; Donaldson v. Waters, 30 Ala. 175.

A. J. WALKER, C. J.—No decision of this court is infringed, and no principle violated, by maintaining that

the purchaser of land, under a verbal contract, cannot recover back the purchase-money paid, when he has gone into and enjoyed the possession for many years, unless the contract is rescinded.—Donaldson's Adm'r v. Waters, 30 Ala. 175; Waters v. Spencer, 22 Ala. 460; Gillespie v. Battle, 15 Ala. 276; Rhodes v. Storr, 7 Ala. 346; Bates v. Terrell, *ib.* 129; Johnson v. Hanson, 6 Ala. 351; Cope v. Williams, 4 Ala. 362; Castleberry v. Pierce, 5 S. & P. 150; Meredith v. Naish, 3 St. 207; Allen v. Booker, 2 St. 21. The decision in Donaldson's Adm'r v. Waters, *supra,* clearly asserts the proposition, that the plaintiff in this case cannot recover, unless he shows that there has been a rescission of the contract of purchase; and by that decision we are content to abide. The rescission of the contract is a part of the plaintiff's case, and the *onus* of proving it is upon him. Unless it was shown, he had no right of recovery.

[2.] If the plaintiff has shown a rescission, it resulted from the recovery of the land, with damages, from the widow of the plaintiff's intestate before the commencement of this suit, and the assent on the part of the plaintiff to the repudiation of the contract, supposed to have been thus manifested. Whether or not the act of recovering the land and the mesne profits was a repudiation of the verbal contract of sale, which the other party could elect to regard as a rescission, must necessarily have depended upon the terms of the contract. The recovery of the land may have been consistently with the terms of the contract, for the purpose of obtaining payment of the purchase-money yet due; or it may have been for the purpose of preventing an adverse possession from ripening into a title, which would deprive him of the ability to comply with his contract to convey. This is precisely the view which was taken of this question in Waters v. Spencer, 22 Ala. 460; and we think it was correct.

It is no reply to this argument, that the vendor had a legal right to recover the land, no matter what were the terms of the verbal contract, and whether such recovery was or was not consistent with it; for the question is not, whether he might, in violation of the contract, have en-

tered upon the land; but whether he has violated the contract, and thereby abandoned it, and given the other party a right to treat it as at an end, and to recover back all that had been paid on account of it. Unless the recovery of the land and the mesne profits was inconsistent with the terms of the contract, there was no repudiation of it, and no corresponding right to treat it as rescinded. All the rulings of the court below, which are assigned for error, were consistent with this view of the law, and we must hold those rulings correct.

Judgment affirmed.